[Civ. No. 14-8115, Dkt. No. 20;
Civ. No. 14-8116, Dkt. No. 29]

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| GLENN M. WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Civil No. 14-8115 (RMB/JS) |
| LORISSA WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Civil No. 14-8116 (RMB/JS)<br><br>**OPINION** |

**Appearances:**

Brent F. Vullings
Vullings Law Group, LLC
3953 Ridge Pike, Suite 102
Collegeville, PA 19426
      Attorney for Plaintiffs

Dorothy A. Kowal
Price, Meese, Shulman & D'Arminio, PC
Mack-Cali Corporate Center
50 Tice Boulevard
Woodcliff Lake, New Jersey 07677
      Attorney for Defendant

**BUMB,** United States District Judge:

This matter comes before the Court upon the filing of two actions, <u>Glenn Williams v. Experian</u>, Civ. No 14-8115 and <u>Lorissa Williams v. Experian</u>, Civ. No. 14-8116, both on December 30, 2014 by plaintiffs Glenn Williams and Lorissa Williams (collectively, "Plaintiffs").  Plaintiffs bring causes of action for a violation of the Fair Credit Reporting Act ("FCRA") and defamation.  On September 1, 2015, Defendant Experian Information Solutions, Inc. ("Experian") moved for summary judgment.  (Civ. No. 14-8115, Dkt. No. 20; Civ. No. 14-8116, Dkt. No. 29.)  On June 6, 2016, the Court held oral argument. For the reasons set forth below, the Court will grant summary judgment in favor of Experian in both cases and will issue an order to show cause why sanctions should not be imposed upon counsel for Plaintiffs under Federal Rule of Civil Procedure 11 for bringing these frivolous lawsuits.  The Court addresses these motions below.

## I.   FACTUAL BACKGROUND[1]

These cases center around credit report disputes the Plaintiffs filed with Experian, a consumer reporting agency as that term is defined by the FCRA.  (Def.'s Statement of Facts &

---

[1] The factual predicates of Plaintiffs' respective cases are nearly identical.  As such, the Court describes the factual background of the cases in tandem, noting pertinent and unique facts of each case as relevant.

Pl.'s Resps. at ¶ 2, Civ. No. 14-8115, Dkt. Nos. 20-1, 22-1 (hereinafter "G. Williams SOF at ¶ ___.")).  As a consumer reporting agency, Experian gathers credit and public record information and reports that information, typically in connection with the consumer's desire to engage in a credit transaction.  (Def.'s Statement of Facts & Pl.'s Resps. at ¶ 3, Civ. No. 14-8116, Dkt. Nos. 29-1, 31-1 (hereinafter "L. Williams SOF at ¶ ___.")).  In essence, Experian acts as a warehouse for credit information that assembles, stores, and furnishes data as it is provided by credit grantors and public record vendors. (G. Williams SOF at ¶ 4.)

In these cases, while carrying out its business as a consumer reporting agency, Experian determined and reported that each Plaintiff had filed two Chapter 13 bankruptcies in the United States Bankruptcy Court for the District of New Jersey: In re Glen Williams, Case No. 08-15866; In re Glenn Williams, Case No. 08-19833; In re Lorissa Williams, Case No. 08-29436; In re Lorissa Williams, Case No. 09-11266.  (Id. at ¶ 15; L. Williams SOF at ¶ 15.)  Plaintiffs disputed these bankruptcies to Experian under the premise that neither one of them had filed bankruptcy petitions.  Specifically, Ms. Williams disputed the bankruptcies in an online dispute form submitted on November 22, 2011.  Mr. Williams disputed his bankruptcies in an online form

he submitted on April 3, 2012. (L. Williams SOF at ¶ 17; G. Williams SOF at ¶ 17.)

Following the receipt of each Plaintiff's dispute, Experian conducted a reinvestigation by sending an Automated Consumer Dispute Verification ("ACDV") to LexisNexis, the entity that furnished the records showing Plaintiffs had filed the above bankruptcies.[2] (Id. at ¶¶ 11, 18; L. Williams SOF at ¶¶ 11, 18.) LexisNexis is Experian's public records vendor. (Declaration of Jason Scott at ¶ 17.) Thereafter, LexisNexis responded that the bankruptcy filings had been accurately attributed to both Plaintiffs. (Def.'s Ex. A, Civ. No. 14-8115 (Mr. Williams); Def.'s Ex. A, Civ. No. 14-8116 (Ms. Williams)). LexisNexis verified each Plaintiff's name, address (XXXXXXXXXX, Sewell, N.J., 08080) and last four digits of his or her social security numbers, although no mention was made of the omission of the second "n" in Mr. Williams' first name in some bankruptcy documents in one bankruptcy proceeding. (G. Williams SOF at ¶ 19; L. Williams SOF at ¶ 19.) Each Plaintiff was informed of the results of the credit dispute process by letter from Experian: Ms. Williams on December 12, 2011 and Mr. Williams on

---

[2] Plaintiffs deny that Experian conducted a reinvestigation, however, they do so only generally without citation to any record material. While Plaintiffs' responses to Defendants' Local Rule 56.1 statement suggest they dispute the reasonableness of the reinvestigation, it does not appear that any fact in the record contradicts the notion that an ACDV was sent to the furnisher of the record.

May 9, 2012.  (Def.'s Ex. B, Civ. No. 14-8115 (Mr. Williams);
Def.'s Ex. B, Civ. No.  14-8116 (Ms. Williams).)

    Thereafter, more than seven months after Experian informed
Mr. Williams of the results of its reinvestigation, on December
20, 2012, Experian received a second dispute by letter from Mr.
Williams concerning the two bankruptcies.  (G. Williams SOF at ¶
21.)  Experian flagged the second dispute as potentially
fraudulent and replied to Mr. Williams, using the same Sewell,
New Jersey address as that connected with the bankruptcy
petitions.  In a letter dated December 24, 2012, Experian
indicated that it had not taken any action on the request
because of its opinion that the document was suspicious and any
future requests received in a similar manner would not receive a
response.[3]  (Def.'s Ex. D, Civ. No. 14-8115 ("We received a
suspicious request regarding your personal credit information
that we have determined was not sent by you.  This could be
deemed as deceptive or fraudulent use of your information.  We
have not taken any action on this request.  Any future requests

---

[3] At oral argument counsel for Experian explained that there are
several reasons why a letter dispute might seem fraudulent such
as the origin of the mailing.  Here, the Court judicially notes
the mailing ZIP codes on each of the suspicious mailings from
Plaintiff do not appear to match the Sewell, New Jersey return
address.  (Ex. C, Civ. No. 14-8115.)  The same is true for Ms.
Williams' flagged correspondence, discussed infra.  The ZIP code
begins with a "9," which are ZIP Codes affiliated with the West
Coast and Alaska.  See
http://pe.usps.gov/Archive/HTML/DMMArchive0106/L002.htm.

made in this manner will not be processed and will not receive a response.").) The letter additionally instructed Plaintiff to contact Experian by phone or online if he sought to legitimately dispute any portion of his credit report. (<u>Id.</u> at ¶¶ 21, 22; Def.'s Ex. D, Civ. No. 14-8115 ("If you believe that information in your personal credit report is inaccurate or incomplete, please call us at the phone number that displays on your Experian personal credit report, or visit our secure website . . . .")[4].) A second flagged letter was received purportedly by Mr. Williams almost two years later, on November 20, 2014, which Experian flagged and to which it did not respond.[5] (<u>Id.</u> at ¶ 24.)

Experian also received a second dispute from Ms. Williams on January 30, 2012 concerning her two purported bankruptcies. (L. Williams SOF at ¶ 21.) This second dispute was not flagged, but instead Experian responded that it had already investigated those items and would not do so a second time, pursuant to Section 611(a)(3)(A) of the FCRA. (<u>Id.</u> at ¶ 22 ("We have already investigated this information and the credit grantor has

---

[4] The letter also indicated that Mr. Williams could dispute his personal credit report by mail, including correspondence with his full name including middle initial and general, social security number, current mailing address, date of birth, and previous addresses for the past two years. (Def.'s Ex. D, Civ. No. 14-8115.)

[5] The Court notes that no factual documentation or sworn statement by Mr. Williams has been put forth regarding the authenticity of either of these flagged disputes.

verified its accuracy.") Two subsequent dispute letters purporting to be authored by Ms. Williams were flagged as potentially fraudulent and treated in a similar manner to Mr. Williams' potentially fraudulent dispute letters.[6] (<u>Id.</u> at ¶¶ 24-27.)

A summary of the history of the Plaintiffs' credit disputes and Experian's responses are as follows:

| Letter | Glenn Williams | Lorissa Williams |
|---|---|---|
| First Dispute Letter | April 3, 2012 | November 22, 2011 |
| Experian Reinvestigation Response by Experian | May 9, 2012 | December 12, 2011 |
| Second Dispute Letter | December 20, 2012 | January 30, 2012 |
| Response to Second Dispute Letter by Experian | December 24, 2012 | February 3, 2012 |
| Third Dispute Letter | November 24, 2014 | December 20, 2012 |
| Response to Third Dispute Letter by Experian | N/A | December 26, 2012 |
| Fourth Dispute Letter | N/A | November 24, 2014 |

## II.   <u>LEGAL STANDARD</u>

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  14 Fed. R. Civ. P. 56(a).  A fact is "material" if it will "affect the

---

[6] To the extent the statements of facts underlying these facts were disputed by Ms. Williams in her responsive Local Rule 56.1 statement, the denials do not dispute the existence of the purported correspondence between the parties, but rather the legal efficacy of such communications.

7

outcome of the suit under the governing law . . . ."  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is

"genuine" if it could lead a "reasonable jury [to] return a

verdict for the nonmoving party."  Id.

When deciding the existence of a genuine dispute of

material fact, a court's role is not to weigh the evidence; all

reasonable "inferences, doubts, and issues of credibility should

be resolved against the moving party."  Meyer v. Riegel Prods.

Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).  However, a mere

"scintilla of evidence," without more, will not give rise to a

genuine dispute for trial.  Anderson, 477 U.S. at 252.  Further,

a court does not have to adopt the version of facts asserted by

the nonmoving party if those facts are "utterly discredited by

the record [so] that no reasonable jury" could believe them.

Scott v. Harris, 550 U.S. 373, 380 (2007).  In the face of such

evidence, summary judgment is still appropriate "where the

record . . . could not lead a rational trier of fact to find for

the nonmoving party . . . ."  Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of

informing the district court of the basis for its motion, and

identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together

with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)) ("[S]peculation and conjecture may not defeat summary judgment.").

## III. **LEGAL ANALYSIS**

As mentioned, Plaintiffs' complaints state two separate causes of action.  The first is a series of violations of the Fair Credit Reporting Act, including the failure to delete inaccurate information from Plaintiff's credit file after reinvestigation in violation of 15 U.S.C. § 1681i(a) and the failure to employ and follow reasonable procedures to assure maximum possible accuracy of accuracy of Plaintiffs' credit report in violation of 15 U.S.C. § 1681e(b).  Compl. ¶¶ 24(a)-(b), Glenn Williams v. Equifax, et al., Civ. No. 14-8115; Compl.

9

¶¶ 25(a)-(b), Lorissa Williams v. Equifax, et al., Civ. No. 14-8116. The second is a cause of action for defamation, arising from the reporting of the "false and negative alleged bankruptcies." Compl. ¶¶ 26-37, Glenn Williams v. Equifax, et al., Civ. No. 14-8115; Compl. ¶¶ 27-38, Lorissa Williams v. Equifax, et al., Civ. No. 14-8116. Because there are clearly no genuine disputed facts, summary judgment will be granted in favor of Experian as to all claims.

**A. FCRA Claims**

Plaintiffs initially challenge Experian's compliance with 15 U.S.C. § 1681e(b)'s requirement that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Id. Plaintiff also argues that Experian failed to follow the FCRA's requirement that agencies conduct a "reasonable reinvestigation to determine whether . . . disputed information is inaccurate . . . ." 15 U.S.C. § 1681i(a)(1)(A).

Generally speaking, a consumer reporting agency does not violate the FCRA's requirement that it "follow reasonable procedures to assure maximum possible accuracy" of credit reports or to "reinvestigate" consumer disputes of information if the information that it reports is factually accurate. Cortez v. Trans Union, LLC, 617 F.3d 688, 708 (3d Cir. 2010)

10

("Negligent noncompliant with § 1681e(b)" includes the element
that "inaccurate information was included in a consumer's credit
report"); Klotz v. Trans Union, LLC, 246 F.R.D. 208, 213 (E.D.
Pa. 2007) ("If the information in a consumer's file was, in
fact, correct, then no investigation could have revealed the
existence of inaccurate information because there was no
inaccurate information to uncover.") (citing Cushman v. Trans
Union Corp., 115 F.3d 220, 227 (3d Cir. 1997)).  As such, once a
Court determines that the credit items that were reported are
factually accurate, the analysis under the FCRA may cease.  Todd
v. Associated Credit Bureau Servs., 451 F. Supp. 447 (E.D. Pa.
1977), aff'd 578 F.2d 1376 (3d Cir. 1978) ("the Court does not
need to reach the issue of reasonableness if it finds initially
that the report furnished was accurate.").

　　　Here, there are compelling and undisputed facts to support
this Court's conclusion that these bankruptcies were in fact
filed by each Plaintiff.  First, and most tellingly, Plaintiffs
have not presented any evidence - in the form of sworn testimony
or any other form - that they did not file the bankruptcy
petitions at issue.  All that is before the Court is a copy of
each Plaintiff's self-serving online dispute form filed with
Experian, which has not been sworn to.  Mr. and Mrs. Williams'
identifying information—social security number, birthdate and
address—are all found on the bankruptcy court documents.

Importantly, Plaintiffs have not disputed the accuracy of this identifying information.  At oral argument, Plaintiffs' counsel, Mr. Vullings, contended – without pointing to any evidence – that there were impostors posing as Plaintiffs.  The Court was incredulous that impostors would go to the lengths that they purportedly did, as evidenced by the public filings.  Specifically, a review of the bankruptcy court documents reveals that a series of installment payments for filing fees were made in each the bankruptcies, amounting to hundreds of dollars.  In re Glenn Williams, Case No. 08-19833 (payment made on May 28, 2008); In re Glen Williams, Case No. 08-15866 (payment made on April 1, 2008); In re Lorissa Williams, Case No. 09-11266 (payment made January 21, 2009); In re Lorissa Williams, Case No. 08-29436 (payment made October 7, 2008).  Moreover, an individual purporting to be Mr. Williams also completed credit counseling over the internet.  In re Glen Williams, Case No. 08-19833, Dkt. No. 14.  Two individuals purporting to be Mr. and Mrs. Williams appeared before the Court for a Section 341 hearing, which was recorded by a court reporter.  In re Lorissa Williams, Case No. 09-11266, Dkt. No. 27.[7]

---

[7] The United States Trustee requires identification of individuals appearing for a Section 341 hearing.  If Plaintiffs' counsel is going to continue to take the position that Plaintiffs did not in fact file the bankruptcy petitions, he may wish to pursue this.

Against this evidence, the Court repeatedly asked Mr. Vullings, for **evidence** underpinning his "theory" that there were impostors posing as Plaintiffs.  The Court even pointed out to counsel that the dockets of each of the bankruptcy cases reflected that the United States Bankruptcy Court sent letters and notices of each pleading filed (including the petitions) to each Plaintiff at the listed address, the Sewell, New Jersey address, which remains their current address today.  The Court inquired as to why Plaintiffs would continually receive notices of a bankruptcy proceeding being litigated on his or her behalf by a supposed impostor, yet do nothing.  Plaintiffs' counsel responded — again, without record citation — that Plaintiffs did nothing because they did not know the bankruptcies would end up on their credit scores.

The only opposition put forth by Plaintiffs is, one, their bare, self-serving credit disputes filed with Experian, and, two, Mr. Williams' identification of a missing "n" in his first name in certain of his bankruptcy documents, despite the fact that all the other identifying information is correct.[8]  This is a far cry from a scintilla of evidence.  Anderson, 477 U.S. at

---

[8] In Ms. Williams' complaint, she also avers that "Plaintiff recently discovered that the alleged Chapter 13 Bankruptcy petitions purported to be hers contains [sic] a signature that in no way resembles her signature."  Compl. at ¶ 15, Civ. No. 14-8116.  This allegation was never factually developed and was never mentioned after the pleading stage by Plaintiffs.

252.  Indeed, it is hardly evidence.  In the end, there is nothing before this Court to show that Plaintiffs did not file these petitions.  To the contrary, the evidence all points to the fact that Experian has had to expend resources for over a year and a half litigating a baseless case.  And, again, it is most noteworthy that Plaintiffs have not even submitted a sworn document before this Court in support of their claims that they did not file these bankruptcies.  In this Court's mind, this speaks volumes and highlights the nakedness of the allegations.  As such, summary judgment is proper in favor of Experian on all FCRA claims.[9]

**B. Defamation**

Plaintiffs also bring claims for defamation against Experian for reporting the disputed bankruptcies.  Pursuant to 15 U.S.C. § 1681h(e), qualified immunity generally prevents consumer reporting agencies from being sued for defamation unless malice or intent to injure can be shown.  <u>Id.</u>; <u>Cousin v. Trans Union Corp.</u>, 246 F.3d 359, 375 (5th Cir. 2001).  Thus it must be shown that Experian knew the reports about Plaintiffs were false or published them with reckless disregard for whether they were false.  <u>Cousin</u>, 246 F.3d at 375.

---

[9] The Court makes this determination without reaching the issue of whether Experian's procedure or reinvestigation was reasonable under the circumstances.

Given the obvious conclusion that Plaintiffs filed the petitions, Plaintiffs have additionally failed to make out a claim for malice.  In supporting a claim for malice, Plaintiffs perplexingly rely largely on allegations contained in the complaints. Plaintiffs essentially argue that in publishing Plaintiffs' disputed bankruptcies, despite Plaintiffs having disputed them, Experian exhibited malice.

This utter lack of factual development is not, and cannot be, enough to survive summary judgment.  Plaintiffs have not genuinely disputed the fact that Experian published and continued to publish the credit reports because its public records vendor, LexisNexis, confirmed that they belonged to Plaintiffs.  (G. Williams Ex. A; L. Williams Ex. A.)  The bankruptcies were pursued, but for a small typo, under Plaintiffs' names, with Plaintiffs' birthdates, addresses and social security numbers.  (G. Williams Ex. A; L. Williams Ex. A.)  Experian's decision to publish Plaintiffs' bankruptcies despite Plaintiffs' disputes because a second check confirmed their initial reporting is evidence that Experian did not knowingly publish inaccurate information.  The fact that they relied on their public records vendor's usual procedure, which verified Plaintiffs' identifying information, is evidence that their reporting was not done with recklessness toward the truth. To hold that the continued publication of re-verified, negative

15

credit information after it is disputed by Plaintiff subjects a consumer reporting agency to a claim for defamation would essentially require such agencies to change the information at a customer's direction or face trial.  See generally, O'Connor v. Trans Union Corp., No. CIV. A. 97-4633, 1999 WL 773504, at *8 (E.D. Pa. Sep. 29, 1999) (granting summary judgment for defendant where plaintiff provided no evidence of malice).

### C. Order to Show Cause and Sanctions

The final issue to be resolved in this case is the apparent lack of any meaningful factual investigation carried out by Plaintiffs' attorney prior to bringing these lawsuits.  The Court is troubled by the downright lack of evidence put forward by Plaintiffs to support their criminal allegations about an identity theft perpetrated against them by some unidentified impostors.  In pursuit of this full-throttled allegation, counsel for Plaintiffs deposed no witnesses, offered no sworn affidavits of Plaintiffs' personal knowledge of the theft, and provided no documentation concerning Plaintiffs' naked allegations that these bankruptcies did not belong to them. Counsel appeared to rest solely on Experian's exhibits about the credit dispute resolution process and a missing "n" in Glenn.[10]

---

[10] That misspelling relates to only one of the four bankruptcies Plaintiffs dispute.  Second, that misspelling occurs in only a portion of the documents relating to that bankruptcy.  See, e.g., In re Glen Williams, Case No. 08-15866, Dkt. No. 5

It is certainly not forbidden for a Plaintiff to oppose summary judgment without putting forth its own exhibits, but where Plaintiffs' factual theory of the case is as serious as it is here, the failure to even offer a sworn affidavit in support of it raises all kinds of flags.

Given the above described state of Plaintiffs' argument, and to hopefully alleviate the concern that Plaintiffs were attempting to push this litigation forward past summary judgment and onto trial without the burden of actually developing the facts supporting the case, the Court held oral argument on June 6, 2016.  The Court's concern was not alleviated. Plaintiffs' counsel's explanation was, that in a "quick conversation" with his client he found out "very quickly" that a person that Plaintiffs did not know was carrying out the bankruptcy proceedings on their behalf.[11]  In this Court's mind, as it currently understands counsel's efforts to verify the veracity of his clients' contentions, a "quick conversation" – no matter how quick "quick" is – is simply inexcusable.

---

(containing partially handwritten caption reading "IN RE: Glenn Williams").

[11] As counsel stated, "In a very quick conversation with my client . . . I found out very quickly they were dealing with someone who was doing some sort of credit repair for them.  Umm, in essence, what we've come to find out – again a very quick search – umm that this person they were dealing with was filing fraudulent bankruptcies . . . ."

To be clear, the problem with Plaintiffs' contentions that two supposed unnamed individuals are filing bankruptcies on their behalf - including the use of Plaintiffs' correct identifying information, the paying of filing fees on their behalf, the attendance of credit counseling on their behalf, and live appearances in Bankruptcy Court - is not that they are bizarre.  Federal Courts are often presented with strange or seemingly incredible factual predicates, and some of those predicates are ultimately supported by the factual record. Instead, the problem with Plaintiffs' counsel's actions in this proceeding is that he has seen fit to pursue these fanciful and farfetched claims of a multi-year bankruptcy impersonation fraud up to and through summary judgment motions without any apparent modicum of factual investigation or attempt to set forth <u>any factual basis for the claims whatsoever.</u>  Without showing how Experian might have detected this fraud, which has apparently also fooled a United States Bankruptcy Court on four separate occasions over a series of years, Plaintiffs press on with their claims and argue that Experian should be liable for violating the FCRA and defamation.  They do so:

- Without conducting any identifiable discovery whatsoever;

- Without providing any sworn statement by either Plaintiff disclaiming the bankruptcies or outlining the fraud;

18

- Without deposing either Plaintiff to outline this fraud;

- Without deposing any Experian employee about its attempt to identify this fraud;

- Without providing a single document in support of Plaintiffs' opposition to summary judgment;

- Without inquiring into or seeking to explain with evidence Plaintiffs' failure to file any police charges concerning this alleged fraud; and

- Without inquiring into or seeking to explain with evidence Plaintiffs' failure to identify the existence of the fraud to the bankruptcy court after numerous bankruptcy court documents were served on Plaintiffs' address.

Instead, as represented by counsel at oral argument, Plaintiffs' claim is predicated solely on counsel's passing conversation with his clients, which amounts to neither evidence itself nor meaningful factual investigation.

This Court is not naïve to the fact that FCRA litigation and its cousin Fair Debt Collection Practices Act (FDCPA) litigation are often pursued on boilerplate pleadings with no ultimate intent or hope that the case proceeds to trial or much past the pleading stage.  See generally Bock v. Pressler and Pressler, 30 F. Supp. 3d 283, 287 (D.N.J. July 1, 2014) (discussing, under somewhat different facts, that lawyer's practice in FDCPA includes automation and review by non-attorney personnel).  Indeed, to this end, a cursory search of the dockets reveals that Plaintiffs' counsel appears to have filed

19

hundreds of FCRA and FDCPA actions in the District of New
Jersey, many of which did not proceed past several docket
entries before the case was terminated.[12]  The fact that some
portion of FCRA or FDCPA cases present similar factual
predicates prone to bulk litigation does not, however, give an
attorney license to file a case without any meaningful review or
investigation.  See generally id. (noting that in filing a debt
collection action, an attorney's review of the pleadings
violated the FDCPA because "[w]hatever reasonable attorney
review may be, a four-second scan is not it.").  That obvious
notion is even more manifest here where Plaintiffs do not seek
to bring a typical factual scenario, but rather a magnificently
*atypical* one.

Lawyers have an obligation to reasonably investigate their
claims prior to filing them in court.  N.J. Rule of Prof'l
Conduct 3.1 ("A lawyer shall not bring or defend a proceeding,
nor assert or controvert an issue therein *unless the lawyer
knows or reasonably believes that there is a basis in law and
fact for doing so that is not frivolous . . . .*" (emphasis
added)).[13]  The seriousness of legal proceedings and their

---

[12] A rudimentary sampling of one-hundred of these revealed that
fifty-four were terminated prior to an answer and thirty-five
were dismissed prior to dispositive or discovery motion
practice.
[13] The commentary to Model Rule of Professional Conduct 3.1 is
also illustrative on this point: "The filing of an action or

associated consequences for the parties are simply too important to permit lawyers to litigate for years on a single "quick conversation" with a client about unquestionably material facts and quite serious allegations.  As the record now stands, and as oral argument only made clearer, this Court has legitimate doubts that this bedrock principal of legal ethics was followed in this case.  And as set forth above, this Court has little doubt that Plaintiffs filed the bankruptcy petitions, and their mailings to Experian stating otherwise have all the markings of a well-schemed fraud.[14]  In short, any investigation beyond a

---

defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery.  *What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and determine that they can make good faith arguments in support of their clients' positions*."  Model Rules of Prof'l Conduct R. 3.1 cmt. 2 (2009) (emphasis added); see also Wisconsin Chiropractic Ass'n v. State, 676 N.W.2d 580, 589 (Wis. Ct. App. 2004) (interpreting a similar statute and explaining that, "[I]n deciding whether to rely on one's client for the factual foundation of a claim, an attorney must carefully question the client and determine if the client's knowledge is direct or hearsay and is plausible; the attorney may not accept the client's version of the facts on faith alone.  Allegation by a client of serious misconduct of another may require a more serious investigation.  While the investigation need not be to the point of certainty to be reasonable and need not involve steps that are not cost-justified or are unlikely to produce results, the signer must explore readily available avenues of factual inquiry rather than simply taking a client's word.").

[14] Pursuant to 18 U.S.C. § 1341, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . places in any post office or authorized depository for mail matter, any matter or

"quick conversation" should have sounded the Rule 3.1 alarm bells.

Mr. Vullings should nevertheless be afforded the opportunity to correct this Court's understanding of his factual development of the case, if appropriate.[15]  Accordingly, as outlined in the accompanying Order, Plaintiffs' counsel is directed to show cause to this Court why he should not be sanctioned for presenting pleadings and other papers to this Court which were not predicated on a reasonable inquiry under the circumstances to ensure the factual contentions had evidentiary support.  Fed. R. Civ. P. 11(b).

**IV.   <u>CONCLUSION</u>**

As outlined above, Defendant Experian's motions for summary judgment in each of the above-captioned cases are **GRANTED**. Additionally, as set forth in the accompanying Order, Plaintiffs' counsel is ordered to show cause why he should not be sanctioned.


DATED: <u>June 21, 2016</u>

---

thing whatever to be sent or delivered by the Postal Service, . . . shall be fined under this title or imprisoned not more than 20 years, or both."

[15] For the avoidance of confusion, the purpose of this order to show cause is not to permit Plaintiffs or Plaintiffs' counsel a second bite at the summary judgment apple.  Even if Plaintiffs' allegations concerning imposters are true, the time for Plaintiffs to point to evidence indicating summary judgment is improper has come and gone.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE