IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| **GLENN M. WILLIAMS**<br>    Plaintiff | : | Civil No. 14-8115 (RMB/JS) |
| vs. | : | |
| **EXPERIAN INFORMATION SOLUTIONS, INC., et. al.**<br>    Defendants | : | |
| **LORISSA WILLIAMS**<br>    Plaintiff | : | Civil No. 14-8116 (RMB/JS) |
| vs. | : | |
| **EXPERIAN INFORMATION SOLUTIONS, INC., et. al.**<br>    Defendants | : | |

**PLAINTIFF'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE
WHY PLAINTIFF'S COUNSEL SHOULD NOT BE SANCTIONED**

Brent F. Vullings, Esq.
On the Brief

**TABLE OF CONTENTS**

Table of Authorities…………………………………………………………………………….3

I.      Introduction……………………………………………………………………………..4

II.     Procedural History…………………………..………………………………………….4

III.    Legal Argument……………………………………………………………………...5

        a.      Legal Standard……………………………………………………………………5

        b.      Plaintiff's Counsel's Conduct Does Not Meet The Standard For Rule 11 Sanctions…………………………………………………………………………..6

        c.      Plaintiff's Counsel Performed the Required Research and Due Diligence Prior to Filing Suit Pursuant to New Jersey Rule of Professional Conduct 3.1……..…10

        d.      There is No Basis for the Imposition of Sanctions Against Plaintiffs' Counsel Pursuant to the Federal Rules of Civil Procedure Because it Was Reasonable for Plaintiffs' Counsel to Believe at the Time of Filing that Such Filing Was Meritorious……………………………………………………………...…..14

IV.     Conclusion……………………………………………………………………………16

Declaration of Brent F. Vullings, Esq. in Support of Plaintiff's Counsel's Response to Order to Show Cause Why Plaintiff's Counsel Should Not Be Sanctioned……………………………18

Exhibit "A": Plaintiff Lorissa Williams' Alleged Bankruptcy Petition Filed on January 21, 2009………………………...…………………………………………………...…………24

Exhibit "B": Plaintiff Lorissa Williams' Alleged Bankruptcy Petition Filed on October 7, 2008……………………………………………………………………………………………31

Exhibit "C": Plaintiff Glenn Williams' Alleged Bankruptcy Petition Filed on May 28, 2008….75

Exhibit "D": Plaintiff Glenn Williams' Voter Identification Card and Redacted Social Security Card and Plaintiff Lorissa Williams' Redacted Social Security Card………………...126

Exhibit "E": Andrew Bartok's Indictment……………………………………………………...128

Exhibit "F": News Release from the United States Postal Inspection Service…………………163

Certificate of Service……………………………………………………………………...165

## TABLE OF AUTHORITIES

**CASES**

*Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010)……………………………………………………….………6

*Bensalem Township v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994)…………………………………………………………………………………….12

*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 549-50, 112 L. Ed. 2d 1140, 111 S. Ct. 922 (1991)………………………………………………………12

*Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)………….6

*Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991)………………...6

*Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir. 1988)……………………………5, 6

*Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, 507 F. Supp.2d 484, 492 (D.N.J. 2007)…..10

*Sheeran v. Blyth Shipholding S.A*……………………………………………………………….9

*Schering Corp. v. Vitarine Pharm., Inc.*, 889 F.2d 490, 496 (3d Cir. 1989)…………………......13

**FEDERAL RULES**

*Fed. R. Civ. P. 11(b)*…………………………………………………………………………….5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| GLENN M. WILLIAMS<br>　　Plaintiff<br><br>　　　vs.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC., et. al.<br>　　Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil No. 14-8115 (RMB/JS) |
| LORISSA WILLIAMS<br>　　Plaintiff<br><br>　　　vs.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC., et. al.<br>　　Defendants | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil No. 14-8116 (RMB/JS) |

**PLAINTIFFS' COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE
WHY PLAINTIFFS' COUNSEL SHOULD NOT BE SANCTIONED**

**I.      INTRODUCTION**

Plaintiffs' Counsel hereby responds to this Honorable Court's Order to Show Cause Why Plaintiffs' Counsel Should Not Be Sanctioned as follows:

**II.     PROCEDURAL HISTORY**

On December 30, 2014, Plaintiffs Glenn Williams and Lorissa Williams, by and through their undersigned attorney, filed individual Complaints against the defendant credit reporting agencies for their violations of the Fair Credit Reporting Act. All parties except Experian Information Solutions, Inc. settled these matters with the Plaintiffs. On September 1, 2015, Defendant Experian Information Solutions, Inc. filed its Motion for Summary Judgment as to both matters. Plaintiffs responded in Opposition on October 9, 2015. Following in-person oral

argument, this Honorable Court granted Experian Information Solutions, Inc.'s Motion for Summary Judgment and issued an Order to Show Cause Why Plaintiff's Counsel Should Not Be Sanctioned on June 21, 2016.

### III. LEGAL ARGUMENT

#### A. LEGAL STANDARD

Rule 11(b) of the Federal Rules of Civil Procedure provides: "By presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." *Fed. R. Civ. P. 11(b)*.

In gauging the reasonableness of an attorney's pre-filing inquiry, the Advisory Committee Notes to Rule 11 suggest consideration of four (4) factors: (1) the amount of time available to the signer for conducting the factual and legal investigation; (2) the necessity of relying on a client for the underlying factual information; (3) the plausibility of the legal position advocated; and (4) whether the case was referred to the signer by another member of the Bar. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 95 (3d Cir. 1988).

When evaluating whether conduct violates Rule 11, the Third Circuit applies a "reasonableness under the circumstances" standard, which is defined as "an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well grounded in law and fact." *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991). The wisdom of hindsight should be avoided, and the attorney's conduct must be judged by "what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11 advisory committee note; *Mary Ann Pensiero, Inc. v. Lingle*, 847 F. 2d 90, 94 (3d Cir. 1988)

B.  **PLAINTIFF'S COUNSEL'S CONDUCT DOES NOT MEET THE STANDARD FOR RULE 11 SANCTIONS**

In evaluating a Rule 11 motion for sanctions, a district court must determine whether the attorney's conduct was objectively reasonable under the circumstances. *Ario v. Underwriting Members of Syndicate 53 at Lloyds for the 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010). Sanctions under Rule 11 are to be applied only in the "exceptional circumstance" where a claim or motion is "patently unmeritorious or frivolous." *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988).

In the present matter, Mr. and Mrs. Williams advised Plaintiff's counsel that they had several bankruptcies on their credit reports which they had never filed. Plaintiffs' counsel personally reviewed, via PACER, Mrs. Williams' alleged bankruptcies which were filed on January 21, 2009 and October 7, 2008 as well as Mr. Williams' alleged bankruptcies which were filed on April 1, 2008 and May 28, 2008. Upon further review of Mr. and Mrs. Williams' alleged bankruptcy petitions, Plaintiffs' counsel asked Mr. and Mrs. Williams if their home was in foreclosure during 2008-2009. Mr. and Mrs. Williams advised Plaintiffs' counsel that their home had been in foreclosure during 2008-2009. [Declaration of Brent F. Vullings, Esq].

Mr. and Mrs. Williams further advised Plaintiffs' counsel that they had "worked with" a man named "Andrew Bartok," whom they had paid monthly for his services in an attempt to avoid foreclosure. Following a subsequent conversation, Plaintiffs' counsel forwarded the alleged bankruptcy filings to Mr. and Mrs. Williams, and asked them if they had signed or filed them. Plaintiffs' counsel specifically asked if the bankruptcies looked familiar or if they were Mr. or Mrs. Williams' petitions. Mr. and Mrs. Williams advised Plaintiffs' counsel that the signatures on the filings were not theirs, and further advised Plaintiffs' counsel that they had never seen or consented to the filings. Mr. Williams further advised Plaintiffs' counsel that his first name was misspelled on one of the petitions. [Declaration of Brent F. Vullings, Esq].

Plaintiffs' counsel asked Mr. and Mrs. Williams to send official documents to his office containing their signatures. Mr. Williams sent Plaintiffs' counsel his voter ID card and social security card. Mrs. Williams' sent Plaintiffs' counsel her social security card. Plaintiffs' counsel noted that the signatures were different from those on the bankruptcy petitions. [Declaration of Brent F. Vullings, Esq].

Following substantial research on "Andrew Bartok," Plaintiffs' counsel found Bartok's indictment for, among other things, "defraud[ing] … clients … by use of the United States Bankruptcy courts." Plaintiffs' counsel noted that the indictment read, "The clients' … petitions, signed under penalty of perjury, purported to have been filed pro se by the clients, without assistance from any bankruptcy petition preparer or attorney and each contained a Chapter 13 voluntary petition form which listed, among other things, basic personal identification information for the client." Plaintiffs' counsel noted that Mr. and Mrs. Williams' bankruptcies were purported to have been filed pro se. [Declaration of Brent F. Vullings, Esq].

Plaintiffs' counsel noted that Andrew Bartok's indictment read, "In some instances, when a bankruptcy petition was dismissed, employees of [Bartok's company] filed a subsequent bankruptcy petition, again for the sole purpose of improperly using the United States bankruptcy laws to delay foreclosure of a client's home." Plaintiffs' counsel noted that Mr. and Mrs. Williams had multiple bankruptcy petitions of record. Plaintiffs' counsel noted that the indictment read, "From in or about 2000 through in or about February 2011, … Andrew Bartok … knowingly and willfully, having devised and intending to devise a scheme and artifice to defraud and for the purpose of executing and concealing such a scheme and artifice and attempting to do so, filed a petition under Title 11, filed a document in a proceeding under Title 11, and made a false and fraudulent representation, claim, and promise concerning and in relation to a proceeding under Title 11 at any time before or after the filing of the petition, and in relation to a proceeding falsely asserted to be pending under such title, to wit, Bartok filed with bankruptcy courts: (i) fraudulent voluntary bankruptcy petitions and (ii) fraudulent letters and motions." Plaintiffs' counsel noted that Mr. and Mrs. Williams' bankruptcy filings were within this time period. After some additional research, Plaintiffs' counsel had contact with other suspected victims of Andrew Bartok to learn more about the illegal actions of Mr. Bartok and to compare the Plaintiffs' allegations with that of others similarly affected. [Declaration of Brent F. Vullings, Esq].

Upon further investigation, Plaintiffs' counsel reviewed a News Release from the United States Postal Inspection Service indicating that Andrew Bartok had been sentenced in 2013 to 22 years in prison and $2,000,000 in restitution for mail fraud and filing fraudulent bankruptcies. Following Plaintiffs' counsel investigation, he advised Mr. and Mrs. Williams to dispute the bankruptcies with the credit bureaus indicating they had never filed the bankruptcies in question.

Prior to filing Plaintiffs' Complaints, counsel for Plaintiffs had many conversations with Plaintiffs to perform the due diligence necessary in order to file the Complaints in these matters. [Declaration of Brent F. Vullings, Esq].

After Plaintiffs' disputes were forwarded to the credit reporting agencies, Plaintiffs' counsel then reviewed each of the consumer reporting agency's responses to further determine the viability of Plaintiffs' claims. Upon reviewing responses that the bankruptcies were verified, following numerous conversations with Plaintiffs, review of Andrew Bartok's method of operation and subsequent indictment, review of Plaintiffs' personal identification, and the credit reporting agencies' lack of reasonable investigation into allegations which clearly have impacted many consumers, Plaintiffs' counsel strongly believed that a violation of the Fair Credit Reporting Act and applicable statutes existed and therefore proceeded accordingly. It is important to note that Plaintiffs' counsel has never been sanctioned by any Court and more specifically not for the reasons being contemplated by this Honorable Court. [Declaration of Brent F. Vullings, Esq].

Accordingly, Plaintiff's counsel's conduct was not "patently unmeritorious or frivolous," and, as such, this Court should not impose sanctions.

In *Sheeran v. Blyth Shipholding S.A.*, No. CV 14-5482 (JBS/AMD), 2015 WL 9048979, at *6 (D.N.J. Dec. 16, 2015), Plaintiff was working in the hold of a ship which was berthed in the Port of Gloucester, when his leg was crushed underneath a crane-controlled tray, causing permanent and severe injuries. He subsequently brought action which named eight business entities as defendants, including Holt Logistics. Plaintiff's Complaint pleaded generally that all Defendants owned, leased, operated, managed, possessed and/or controlled the ship and/or the Port and/or participated in the operation of the Ship and/or the Port. *Id.* at *1. Defendant argued

that sanctions were warranted because there were no specific facts to support Plaintiffs' claim that Holt Logistics was in any way liable for Plaintiff's injury. The Court did not find that the circumstances of the case met the "high standard for imposing sanctions under Rule 11," *Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, 507 F. Supp.2d 484, 492 (D.N.J. 2007) (Simandle, J.). Counsel for Plaintiffs had a good-faith basis to believe that Defendant had a hand in controlling the ship. *Id.* at *6.

In the present matter, even if this Honorable Court believes that the above referenced specific facts do not support Plaintiffs' claim that the Defendants are liable to Plaintiffs, the Court should not find that the circumstances of the case meet the "high standard for imposing sanctions under Rule 11" described in *Oswell*. Counsel for Plaintiffs had a good-faith basis to believe that defendants were in fact liable to Plaintiffs.

Accordingly, since Counsel for Plaintiff had a good-faith basis to believe that defendants were in fact liable to Plaintiffs, this Court should not impose sanctions.

## C. PLAINTIFF'S COUNSEL PERFORMED THE REQUIRED RESEARCH AND DUE DILIGENCE PRIOR TO FILING SUIT PURSUANT TO N.J. RULE OF PROFESSIONAL CONDUCT 3.1

The New Jersey Rule of Professional Conduct 3.1 requires that "a lawyer shall not bring or defend a proceeding, nor assert or controvert an issue therein unless the lawyer knows or reasonably believes that there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law, or the establishment of new law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established." *N.J. Rule of Prof'l Conduct 3.1*.

Upon its consideration of N.J. Rule of Prof'l Conduct 3.1, this Honorable Court expressed its concerns that Plaintiffs' counsel did not follow this principle of legal ethics. This Honorable Court repeatedly cites a "quick conversation" which Plaintiffs' counsel had with the Plaintiffs, and concludes that *one* "quick conversation" would not have been adequate to comply with Plaintiffs' counsel's obligations under N.J. Rule of Prof'l Conduct 3.1. While the undersigned believes that this Honorable Court is correct in its conclusion that *one* "quick conversation" *would not* have been adequate to comply with Plaintiffs' counsel's obligations under N.J. Rule of Prof'l Conduct 3.1, this one "quick conversation" is far from being the only conversation Plaintiffs' counsel had with the Plaintiffs before filing their Complaints, and it is far from being the only investigation conducted by Plaintiffs' counsel before filing their Complaints. It is important to note that Plaintiffs' counsel has never been sanctioned by any Court and more specifically not for the reasons being contemplated by this Honorable Court. [see, generally, Declaration of Brent F. Vullings, Esq].

In the present matter, Plaintiffs' counsel's did fulfill his obligations under N.J. Rule of Prof'l Conduct 3.1. Plaintiff's counsel performed due diligence prior to filing Plaintiffs' Complaints. Plaintiffs' counsel's investigation found that Mr. and Mrs. Williams' signatures on their voter ID cards and social security cards were different from those on the bankruptcy petitions. [Declaration of Brent F. Vullings, Esq].

Plaintiffs' counsel's independent investigation revealed that "Andrew Bartok," with whom Mr. and Mrs. Williams "worked" in an attempt to avoid foreclosure, was indicted for, among other things, "defraud[ing] … clients … by use of the United States Bankruptcy courts." Plaintiffs' counsel's independent investigation revealed that Mr. Bartok's method of operation - to file multiple bankruptcy petitions pro se during the very same time period during which he

"worked" with the Williamses – was in fact identical to the Williamses position as to their alleged bankruptcy filings. [Declaration of Brent F. Vullings, Esq].

After Plaintiffs' disputes were forwarded to the credit reporting agencies, Plaintiffs' counsel then reviewed each of the consumer reporting agency's responses to further determine the viability of Plaintiffs' claims. Upon reviewing responses that the bankruptcies were verified, following numerous conversations with Plaintiffs, review of Andrew Bartok's method of operation and subsequent indictment, review of Plaintiffs' personal identification, and the credit reporting agencies' lack of reasonable investigation into allegations which clearly have impacted many consumers, Plaintiffs' counsel strongly believed that a violation of the Fair Credit Reporting Act and applicable statutes existed and therefore proceeded accordingly. It is important to note that Plaintiffs' counsel has never been sanctioned by any Court and more specifically not for the reasons being contemplated by this Honorable Court. [Declaration of Brent F. Vullings, Esq].

Rule 11 imposes an affirmative duty on the parties to conduct a reasonable inquiry into the applicable law and facts prior to filing. *Bensalem Township v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994); see also *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 549-50, 112 L. Ed. 2d 1140, 111 S. Ct. 922 (1991).

In the present matter, Plaintiff's counsel performed due diligence prior to filing Plaintiffs' Complaints. Plaintiffs' counsel's investigation found that Mr. and Mrs. Williams' signatures on their voter ID cards and social security cards were different from those on the bankruptcy petitions. Plaintiffs' counsel's independent investigation revealed that "Andrew Bartok," with whom Mr. and Mrs. Williams "worked" in an attempt to avoid foreclosure, was indicted for,

among other things, "defraud[ing] … clients … by use of the United States Bankruptcy courts." Also, after some additional research, Plaintiffs' counsel had contact with other suspected victims of Andrew Bartok to learn more about the illegal actions of Mr. Bartok and to compare the Plaintiffs' allegations with that of others similarly affected. [Declaration of Brent F. Vullings, Esq].

Plaintiffs' counsel's independent investigation revealed that Mr. Bartok's method of operation - to file multiple bankruptcy petitions pro se during the very same time period during which he "worked" with the Williamses – was in fact identical to the Williamses position as to their alleged bankruptcy filings. After Plaintiffs' disputes were forwarded to the credit reporting agencies, Plaintiffs' counsel then reviewed each of the consumer reporting agency's responses to further determine the viability of Plaintiffs' claims. Upon reviewing responses that the bankruptcies were verified, following numerous conversations with Plaintiffs, review of Andrew Bartok's method of operation and subsequent indictment, review of Plaintiffs' personal identification, and the credit reporting agencies' lack of reasonable investigation into allegations which clearly have impacted many consumers, Plaintiffs' counsel strongly believed that a violation of the Fair Credit Reporting Act and applicable statutes existed and therefore proceeded accordingly. It is important to note that Plaintiffs' counsel has never been sanctioned by any Court and more specifically not for the reasons being contemplated by this Honorable Court. [Declaration of Brent F. Vullings, Esq].

Thus, since Plaintiff's Counsel performed the required research and due diligence prior to filing suit, this Court should not impose sanctions.

**D.     THERE IS NO BASIS FOR THE IMPOSITION OF SANCTIONS AGAINST PLAINTIFF'S COUNSEL PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE BECAUSE IT WAS REASONABLE FOR PLAINTIFFS' COUNSEL TO BELIEVE AT THE TIME OF FILING THAT   SUCH FILING       WAS MERITORIOUS**

A court should test the signer's conduct by inquiring what was reasonable for the signer to believe at the time the pleading was filed. *Schering Corp. v. Vitarine Pharm., Inc.*, 889 F.2d 490, 496 (3d Cir. 1989).

In the present matter, Mr. and Mrs. Williams' identifying information - social security number, birth date and address - are all found on the bankruptcy court documents, although Mr. Williams' first name was missing an "n" in certain of his bankruptcy documents. However, Mr. Williams' sent Plaintiffs' counsel his voter ID card and social security card. Mrs. Williams' sent Plaintiffs' counsel her social security card. Plaintiffs' counsel noted that the signatures were different from those on the bankruptcy petitions. [Declaration of Brent F. Vullings, Esq].

Mr. and Mrs. Williams further advised Plaintiffs' counsel that they had "worked with" a man named "Andrew Bartok," whom they had paid monthly for his services in an attempt to avoid foreclosure. Following research on "Andrew Bartok," Plaintiffs' counsel found Bartok's indictment for, among other things, "defraud[ing] … clients … by use of the United States Bankruptcy courts." Plaintiffs' counsel noted that the indictment read, "The clients' … petitions, signed under penalty of perjury, purported to have been filed pro se by the clients, without assistance from any bankruptcy petition preparer or attorney and each contained a Chapter 13 voluntary petition form which listed, among other things, basic personal identification information for the client."  Plaintiffs' counsel noted that Mr. and Mrs. Williams' bankruptcies were purported to have been filed pro se. [Declaration of Brent F. Vullings, Esq].

Plaintiffs' counsel noted that the indictment read, "In some instances, when a bankruptcy petition was dismissed, employees of [Bartok's company] filed a subsequent bankruptcy petition, again for the sole purpose of improperly using the United States bankruptcy laws to delay foreclosure of a client's home." Plaintiffs' counsel noted that Mr. and Mrs. Williams had multiple bankruptcy petitions of record. Plaintiffs' counsel noted that the indictment read, "From in or about 2000 through in or about February 2011, … Andrew Bartok … knowingly and willfully, having devised and intending to devise a scheme and artifice to defraud and for the purpose of executing and concealing such a scheme and artifice and attempting to do so, filed a petition under Title 11, filed a document in a proceeding under Title 11, and made a false and fraudulent representation, claim, and promise concerning and in relation to a proceeding under Title 11 at any time before or after the filing of the petition, and in relation to a proceeding falsely asserted to be pending under such title, to wit, Bartok filed with bankruptcy courts: (i) fraudulent voluntary bankruptcy petitions and (ii) fraudulent letters and motions." Plaintiffs' counsel noted that Mr. and Mrs. Williams' bankruptcy filings were within this time period. After some additional research, Plaintiffs' counsel had contact with other suspected victims of Andrew Bartok to learn more about the illegal actions of Mr. Bartok and to compare the Plaintiffs' allegations with that of others similarly affected. [Declaration of Brent F. Vullings, Esq].

Plaintiffs' counsel then reviewed a News Release from the United States Postal Inspection Service indicating that Andrew Bartok had been sentenced in 2013 to 22 years in prison and $2,000,000 in restitution for mail fraud and filing fraudulent bankruptcies. Following this investigation, Plaintiffs' counsel advised Mr. and Mrs. Williams to dispute the bankruptcies with the credit bureaus indicating they had never filed the bankruptcies in question. Prior to filing Plaintiffs' Complaints, counsel for Plaintiffs had many conversations with Plaintiffs to

perform the due diligence necessary in order to file the Complaints in these matters. [Declaration of Brent F. Vullings, Esq].

After Plaintiffs' disputes were forwarded to the credit reporting agencies, Plaintiffs' counsel then reviewed each of the consumer reporting agency's responses to further determine the viability of Plaintiffs' claims. Upon reviewing responses that the bankruptcies were verified, following numerous conversations with Plaintiffs, review of Andrew Bartok's method of operation and subsequent indictment, review of Plaintiffs' personal identification, and the credit reporting agencies' lack of reasonable investigation into allegations which clearly have impacted many consumers, Plaintiffs' counsel strongly believed that a violation of the Fair Credit Reporting Act and applicable statutes existed and therefore proceeded accordingly. It is important to note that Plaintiffs' counsel has never been sanctioned by any Court and more specifically not for the reasons being contemplated by this Honorable Court. [Declaration of Brent F. Vullings, Esq].

Accordingly, since it would be reasonable for Plaintiffs' counsel to believe at the time the pleading was filed that such filing was meritorious, this Court should not impose sanctions.

### IV. CONCLUSION

For all of the reasons set forth above, this Honorable Court should not impose sanctions against Plaintiffs' counsel.

Dated: June 28, 2016								Respectfully submitted,

_____
Brent F. Vullings, Esq.
VULLINGS LAW GROUP, LLC
3953 Ridge Pike Suite 102
Collegeville, PA 19426
610-489-6060