**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GLENN M. WILLIAMS,<br><br>Plaintiff,<br><br>  v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Civil No. 14-8115 (RMB/JS) |
| LORISSA WILLIAMS,<br><br>Plaintiff,<br><br>  v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Civil No. 14-8116 (RMB/JS)<br><br>**OPINION** |

**BUMB**, United States District Judge:

THIS MATTER comes before the Court upon the filing of a response to this Court's June 21, 2016 Order to Show Cause concerning sanctions. (June 21, 2016 Order ("OTSC Order") [Civ. No. 14-8115 Dkt. No. 37; Civ. No. 14-8116 Dkt. No. 33]; June 28, 2016 Response ("OTSC Resp.") [Civ. No. 14-8115 Dkt. No. 38].) For the following reasons, the Court declines to issue sanctions and DISCHARGES the June 21, 2016 Order to Show Cause.

I.  **BACKGROUND**

On December 30, 2014, counsel for the plaintiffs in the above captioned matters, Glenn and Lorissa Williams (the "Plaintiffs"), filed in this Court two complaints alleging, _inter alia_, violations of the Fair Credit Reporting Act ("FCRA").  On September 1, 2015, Defendant Experian Information Solutions (the "Defendant" or "Experian") moved for summary judgment.  (Mot. for Summary Judgment [Civ. No. 14-8115, Dkt. No. 20; Civ. No. 14-8116, Dkt. No. 29].)  Thereafter, this Court held oral argument on the motions in both cases on May 19, 2016.

Upon oral argument and review of the record, this Court became concerned that the case had been pursued without any meaningful factual investigation by the Plaintiffs' counsel.  (June 21, 2016 Opinion 16 [Civ. No. 14-8115, Dkt. No. 36; Civ. No. 14-8116, Dkt. No. 43] ("Op.").)  This skepticism arose from Plaintiffs' theory of the case, which revolved around Defendant Experian's inability to discover and correct supposed inaccuracies on Plaintiffs' credit reports resulting from an unidentified individual (or individuals) pursuing bankruptcies by impersonating Plaintiffs, including appearing on their behalf before the United States Bankruptcy Court for the District of New Jersey.  (Op. 16-22.)  Despite a reinvestigation of the disputed credit report items by Defendant Experian, which confirmed Plaintiffs' correct identifying information was

attached to the bankruptcy petitions, Plaintiffs' principal argument was that Defendant Experian should have identified the fraud because one Plaintiff's name, Glenn, was misspelled "Glen" in some (but not all) filings associated with his bankruptcies. (Id. at 16.)  During discovery, Plaintiffs' counsel does not appear to have sought any further information on these bankruptcies, nor sought to depose any potential witness.  (Id. at 18-19.)  In support of the opposition to summary judgment, Plaintiffs provided no exhibits nor sworn statements underlying the serious arguments against Experian and some anonymous fraudster.

    At oral argument, the Court challenged Plaintiffs' counsel with regard to the investigation he undertook of his impersonator-based theory of the case.  As Mr. Vullings remarked at that time, "In a very quick conversation with my client . . . I found out very quickly they were dealing with someone who was doing some sort of credit repair for them.  Umm, in essence, what we've come to find out – again a very quick search – umm that this person they were dealing with was filing fraudulent bankruptcies . . . ."  (Id. at 17 & n.11.)  This answer, along with the remaining commentary offered by Mr. Vullings at oral argument, did not assuage the Court's concern that a meaningful investigation had transpired prior to the lodging (and multiple-year litigation) of the causes of action in this case.  As the

3

Court noted, it appeared Plaintiffs (through counsel) pursued their claims:

- Without conducting any identifiable discovery whatsoever;

- Without providing any sworn statement by either Plaintiff disclaiming the bankruptcies or outlining the fraud;

- Without deposing either Plaintiff to outline this fraud;

- Without deposing any Experian employee about its attempt to identify this fraud;

- Without providing a single document in support of Plaintiffs' opposition to summary judgment;

- Without inquiring into or seeking to explain with evidence Plaintiffs' failure to file any police charges concerning this alleged fraud; and

- Without inquiring into or seeking to explain with evidence Plaintiffs' failure to identify the existence of the fraud to the bankruptcy court after numerous bankruptcy court documents were served on Plaintiffs' address.

(Id. 18-19.)

As a result of the threadbare evidentiary support for the claims and the above-listed deficiencies, this Court granted summary judgment on all claims in both cases and issued an order to show cause why Plaintiffs' counsel, Mr. Vullings, should not be sanctioned for failing to comply with Federal Rule of Civil Procedure 11(b).[1]  (OTSC Order 2.)

---

[1] Specifically, Federal Rule of Civil Procedure 11(b)(3) dictates that: "By presenting to the court a pleading, written motion, or

4

II.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 11 is intended to redress abusive litigation practices, and recognizes that a person signing and submitting a document to the court has a 'nondelegable responsibility to the court.'"  See Nanavanti v. Cape Regional Medical Center, Civ. No. 12-3469 (RMB/KMW), 2013 WL 4787221, at *4 (D.N.J. Sep. 6, 2013) (quoting Fed. R. Civ. P., advisory committee's note); see generally Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).  Pursuant to that Rule, and provided the court finds an attorney violated Rule 11(b) after notice and a reasonable opportunity to respond, the court has the authority to impose "an appropriate sanction on any attorney . . .that violated [Rule 11(b).]"  Fed. R. Civ. P. 11(c).  As the Third Circuit has ruled, "The rule requires a reasonable inquiry into . . . the facts . . . supporting a particular pleading."  Schering Corp. v. Vitarine Pharmaceuticals, Inc., 889 F.3d 490, 496 (3d Cir. 1989).

---

other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ."  Fed. R. Civ. P. 11(b)(3) (emphasis added).

5

Courts apply "an objective standard of 'reasonableness under the circumstances'" in order to evaluate an attorney's conduct.  In re Cendant Corp. Deriv. Action Litig., 96 F.Supp.2d 403, 405 (D.N.J. 2000) (quoting Ford Motor Co. v. Summit Motor Prods. Inc., 930 F.2d 277, 289 (3d Cir. 1991)). "[R]easonableness [under the circumstances is] defined as an objective knowledge or belief at the time of filing of a challenged paper that the claim was well-grounded in law and fact."  Gordon v. United Continental Holding, Inc., 73 F. Supp. 3d 472, 481 (D.N.J. Sep. 3, 2014) (quoting Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 289 (3d Cir. 1991)) (alterations in original).  This review is focused on "the circumstances that existed at the time counsel filed the challenged paper" and "[t]he wisdom of hindsight is to be avoided."  Schering, 889 F.2d at 496.  Typically, sanctions are imposed only "in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous."  Catillo v. Zucker, Goldberg & Ackerman, Civ. A. No. 2:14-cv-6956 (WHW)(CLW), 2015 WL 5722625, at *1 (D.N.J. Sep. 29, 2015) (quoting Ario v. Underwriting Members of Syndicate 53, 618 F.3d 277, 297 (3d Cir. 2010)).

## III. **DISCUSSION**

### A. **Mr. Vulling's Response to the Order to Show Cause**

On June 28, 2016, Mr. Vullings filed a comprehensive response to the Court's order to show cause. (See generally OTSC Resp.) Mr. Vullings' response, which outlines his investigation into the case, as well as his investigation into a now-identified Mr. Andrew Bartok, the alleged perpetrator of Plaintiffs' identity theft, demonstrates that he engaged in a reasonable inquiry into the factual basis of the arguments he set forth at and prior to summary judgment. Included in this response were a sworn declaration by Mr. Vullings, Plaintiffs' alleged bankruptcy petitions, Plaintiffs' redacted social security cards, the indictment of a Mr. Bartok, and a news release from the United States Postal Inspection Service concerning Mr. Bartok.

Beginning with his sworn statement, Mr. Vullings sets forth the factual investigation by which he "performed substantial due diligence to determine that a cause of action did indeed exist and warrant a good faith argument" based upon those facts. (Dec. of Brent F. Vullings, Esq. in Support of OTSC Resp. ("Vullings Dec.") [Dkt. No. 38-1] ¶ 7.) Mr. Vullings also responded to the Court's concern that he proceeded on the impostor-theory of this case after only a quick conversation, arguing that the Court "misconstrued" his statement.

Specifically, Mr. Vullings states that he "had numerous conversations with the Plaintiffs prior to filing the instant complaints" and during those conversations, Plaintiffs "advised [Mr. Vullings] that they had several bankruptcies on their credit reports which they had never filed."  (Id. at ¶¶ 8-10.)  Mr. Vullings states that he was also advised that Plaintiffs "had 'worked with' a man named 'Andrew Bartok,' whom they had paid monthly for his services in an attempt to avoid foreclosure and whom they had provided their dates of birth, social security numbers, and address."  (Id. at ¶ 16.)

After providing Plaintiffs with copies of bankruptcy petitions in their names, which Plaintiffs disavowed as their own, Plaintiffs "advised [Mr. Vullings] that the signatures on the filings were not theirs, and further advised [him] that they had never seen or consented to the filings.  Mr. Williams further advised [Mr. Vullings] that his first name was misspelled on one of the petitions."  (Id. at ¶ 19.)  In response to Plaintiffs' disavowal of the bankruptcy petitions, Mr. Vullings asked for (and received) copies of Plaintiffs' social security cards containing their signatures, in order to compare them to the petitions.  (Id. at ¶ 20.)  Mr. Vullings found the signatures did not appear to match.  (Id.)

Mr. Vullings also states that in investigating the claims he brought against Experian, he conducted independent research

8

into Mr. Bartok. (<u>Id</u>. at ¶ 22.) Mr. Vullings located an indictment of Mr. Bartok which indicates that, after the time Plaintiffs would have worked with him, he was charged with "defraud[ing] . . . clients . . . by use of the United States Bankruptcy Courts." (<u>Id</u>. at ¶ 22.) Specifically, according to his indictment in the United States District Court for the Southern District of New York, Mr. Bartok is alleged to have operated a business called Revelations Consulting LLC through which he would delay foreclosures for clients by filing fraudulent bankruptcy petitions and other false documents in his clients' names "and instructed the clients not to attend bankruptcy court proceedings." (Vullings Dec. Ex. E, ¶ 11 ("Bartok Indictment") [Dkt. No. 38-9].) As the Bartok Indictment continues,

> In doing so, [Mr. Bartok] and his co-conspirators sought to obtain as much money as possible, for as long as possible, from Revelations' clients. When the fraudulent bankruptcy petitions filed by [Mr. Bartok] and his co-conspirators ultimately were dismissed by the bankruptcy courts, Revelations ceased contact with its clients, who faced imminent eviction from their homes, and who already had paid significant sums of money to Revelations.

(<u>Id.</u>)

Mr. Vullings, in furtherance of his research into Mr. Bartok, also identified a news release from the United States Postal Inspection Service following up on the Bartok Indictment.

9

(Vullings Dec. Ex. F ("USPIS Press Release") [Dkt. No. 38-10].)

That news release, issued on October 10, 2013, states that,

> Following an investigation by the U.S. Postal Inspection Service, Andrew Bartok, dba Revelations Consulting LLC, was sentenced today to 22 years in federal prison and ordered to pay in excess of $2 million in restitution for mail fraud, conspiracy to commit mail and wire fraud, conspiracy to commit bankruptcy fraud, obstruction of justice, and bankruptcy fraud . . .
>
> Bartok and his cohorts filed documents containing false information with federal bankruptcy courts in New York and New Jersey to delay the foreclosure of clients' homes. They perpetrated a fraud against the bankruptcy courts as well as their victims, to whom they sold false hope.

(Id.)  Based on the Bartok Indictment and the USPIS Press Release, it appears as though Mr. Bartok was carrying out his scheme to defraud during the time period Plaintiffs in the instant action are purported to have filed their bankruptcies.

### B. **Sanctions**

In concluding its summary judgment opinion and laying out its concern regarding pre-suit investigation, the Court presciently noted:

> To be clear, the problem with Plaintiffs' contentions that two supposed unnamed individuals are filing bankruptcies on their behalf – including the use of Plaintiffs' correct identifying information, the paying of filing fees on their behalf, the attendance of credit counseling on their behalf, and live appearances in Bankruptcy Court - is not that they are bizarre.  Federal Courts are often presented with strange or seemingly incredible factual predicates, and some of those predicates are ultimately supported by the factual record.

(Op. at 18.) Those words ring true at present, as it appears the allegations were not spun out of whole cloth. Rather, Mr. Vullings has now demonstrated that he did in fact undertake a reasonable investigation under the circumstances and set forth arguments consistent with his investigation.

Without belaboring the recitation of the strong showing Mr. Vullings has put forth in response to this Court's order to show cause, Mr. Vullings has shown he investigated the facts from his clients and then independently verified the nature of their claims through other means. As Mr. Vullings correctly argues, he met his duty to independently investigate his claims prior to filing. See Bensalem Township v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1314 (3d Cir. 1994) (noting that Rule 11 "imposes an affirmative duty on the parties to conduct a reasonable inquiry into the applicable law and facts prior to file.") An attorney in Mr. Vullings' shoes, confronted with the information Plaintiffs provided to him, and having independently verified it with the Bartok Indictment and USPIS Press release, could reasonably have believed that Plaintiffs had fallen prey to Mr. Bartok and did not genuinely file the bankruptcies. As such, this Court will not impose sanctions based on the factual investigation Mr. Vullings conducted. Regardless of whether Mr. Bartok actually did count Plaintiffs among his victims, certainly Mr. Vullings proceeding on that theory is not "the

exceptional circumstances where a claim . . . [is] patently unmeritorious or frivolous." Catillo, 2015 WL 5722625, at *1. Indeed, he has shown convincingly to the Court that he conducted a factual investigation reasonable under the circumstances, thereby meeting his obligations under Federal Rule of Civil Procedure 11 and associated rules of professional responsibility.

Despite that determination, the Court feels compelled to note that **none** of the factual record regarding Mr. Vullings' allegations was before the Court at summary judgment. (Opp. to Mot. for Summary Judgment [Dkt. No. 22].) In fact, Plaintiffs' opposition at summary judgment made use of no exhibits whatsoever. Mr. Vullings did not refer to Mr. Bartok by name or with any specificity regarding his fraud, nor did he reference the indictment or press release he now relies upon. It is baffling why a lawyer, in possession of the astounding facts Mr. Vullings had in his back pocket, might decide to present no such facts in combatting summary judgment. Such strategy would seem to work an exemplary disservice to the ends the claims themselves purport to reach. Nevertheless, that issue is not one relevant to the inquiry this Court set forth to conduct— whether Mr. Vullings' investigation of the underlying facts was reasonable. That inquiry has been conducted and answered in the affirmative.

Additionally, as a postscript, this Court feels compelled to point out that it hopes Experian will reevaluate whether it can continue to report these bankruptcies as legitimately belonging to Plaintiffs.  The sum and substance of Mr. Vullings' response seems — in this Court's mind, anyway — to mandate, at the minimum, a further investigation.  Certainly the case as it stood at summary judgment, with no affirmative showing from Plaintiff and no genuinely disputed facts, required summary judgment be granted in Experian's favor.  It would be a mischaracterization to say that the showing Mr. Vullings has put forth in response to the Court's order to show cause has not altered the landscape of information available to Experian.  It is this Court's desire that, in light of those revelations, Experian will attempt to get to the bottom of this.

**IV. CONCLUSION**

Based on his strong response to this Court's order to show cause, Mr. Vullings has assuaged this Court's concern that he failed to investigate his claims.  As such, the June 21, 2016 Order to Show Cause is **DISCHARGED** and the Court does not issue sanctions.  An appropriate order follows.

DATED: August 23, 2016

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

13